HOFMANN & SCHWEITZER
*Attorneys for Plaintiff Robert Farrell*
212 West 35th Street, 12th Floor
New York, NY 10001
Tel: 212-465-8840

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
ROBERT FARRELL,

       Plaintiff,

  -against-           **COMPLAINT**

NATIONAL RAILROAD PASSENGER CORPORATION
d/b/a AMTRAK, WEEKS MARINE, INC.,
and KIEWIT CORPORATION,

       Defendants.
--------------------------------------------------------------------x

## <u>JURY TRIAL DEMANDED</u>

Plaintiff ROBERT FARRELL, by his attorneys, HOFMANN & SCHWEITZER

212 West 35th Street, 12th Floor, New York, New York 10001 claims of the defendants,

NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, WEEKS MARINE,

INC., and KIEWIT CORPORATION, damages upon the following causes of action:

## <u>PARTIES AND JURISDICTION</u>

1. Plaintiff is a citizen of the State of New Jersey.

2. Defendant NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK

   (hereinafter "AMTRAK") is a corporation organized under an Act of Congress. The

   United States owns more than one-half of AMTRAK's capital stock.

3. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C.

   §§ 1331 and 1349 because AMTRAK is a federally chartered corporation and the United

   States owns more than one-half of its capital stock.

4. This Court also has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1333 over plaintiff's claims arising under 33 U.S.C. § 905(b) and the General Maritime Law of the United States. The occurrence alleged herein took place aboard a vessel upon the navigable waters of the United States and is alleged to have been caused, in whole or in part, by the negligence of one or more defendants in their respective capacities as vessel owners, owners pro hac vice, bareboat charterers, operators and/or persons exercising control over the vessel.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over plaintiff's related claims arising under the laws of the State of New York because those claims arise from the same occurrence and form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred within this District, including the occurrence at the Spuyten Duyvil Swing Bridge and the adjoining navigable waters.

7. At all times hereinafter mentioned defendant WEEKS MARINE, INC. (hereinafter "WEEKS") was and is a foreign corporation that is doing business in the State of New York.

8. On or about August 21, 2023 WEEKS was a wholly owned subsidiary of KIEWIT.

9. On or about August 21, 2023, plaintiff was in the employ of WEEKS as a dockbuilder/diver. As such, plaintiff was a covered employee as defined under 33 U.S.C. § 901 et seq., commonly known as the Longshore and Harbor Workers Compensation Act

(hereinafter "LHWCA").

10.    At all times hereinafter mentioned defendant KIEWIT CORPORATION (hereinafter "KIEWIT") was and is a foreign corporation that is doing business in the State of New York.

11.    On or about August 21, 2023, plaintiff was in the employ of KIEWIT as a dockbuilder/diver. As such, plaintiff was a covered employee as defined under 33 U.S.C. § 901 et seq., commonly known as the LHWCA.

## AS AND FOR A FIRST CAUSE OF ACTION UNDER THE NEW YORK LABOR LAW AND COMMON LAW AGAINST AMTRAK

12.    On or about August 21, 2023, defendant AMTRAK owned the structure commonly known as the Spuyten Duyvil Swing Bridge, located at the northern tip of Manhattan and providing a railroad crossing over Spuyten Duyvil Creek between New York County and Bronx County, together with the Bridge's foundation, supports, pilings, fenders, submarine cable and related structures (collectively, the "Property").

13.    On or about August 21, 2023, defendant AMTRAK leased the Property.

14.    On or about August 21, 2023, defendant AMTRAK operated the Property.

15.    On or about August 21, 2023, defendant AMTRAK maintained the Property.

16.    On or about August 21, 2023, defendant AMTRAK managed the Property.

17.    On or about August 21, 2023, defendant AMTRAK possessed the Property.

18.    On or about August 21, 2023, defendant AMTRAK controlled the Property.

19.    On or about August 21, 2023 AMTRAK was the real estate property owner of the Property.

3

20. The Bridge, its components and its submarine cable are structures within the meaning of Labor Law Sections 200, 240 and 241.

21. On or about August 21, 2023 AMTRAK owned the structures and/or had a property interest therein, including a right of way or easement, in the Property.

22. On, or at some point in time prior to August 21, 2023 AMTRAK contracted with WEEKS to construct, demolish, reconstruct, alter, renovate and/or perform construction work on the Property.

23. As of August 21, 2023, the above-referred contract between AMTRAK and WEEKS was in full force and effect.

24. On or about August 21, 2023, WEEKS pursuant to its contract with AMTRAK was doing construction work upon the Property.

25. On or about August 21, 2023, plaintiff was in the employ of WEEKS as a construction worker.

26. On or about August 21, 2023, plaintiff suffered serious injuries in an incident that occurred while he was in the course of his employment with WEEKS on a crane barge that was being used to perform construction work at the Property.

27. On, or at some point in time prior to August 21, 2023 AMTRAK contracted with KIEWIT to construct, demolish, reconstruct, alter, renovate and/or perform construction work on the Property.

28. As of August 21, 2023, the above-referred contract between AMTRAK and KIEWIT was in full force and effect.

29. On or about August 21, 2023, KIEWIT pursuant to its contract with AMTRAK was doing

construction work upon the Property.

30.    On or about August 21, 2023, plaintiff was in the employ of KIEWIT as a construction worker.

31.    On or about August 21, 2023, plaintiff suffered serious injuries in an incident that occurred while he was in the course of his employment with KIEWIT on a crane barge that was being used to perform construction work at the Property.

32.    On or about August 21, 2023, the accident occurred while plaintiff was performing work upon a structure within the meaning of Labor Law Sections 200, 240 and 241, located on the Property.

33.    On or about August 21, 2023, the accident occurred when an unsecured and unstable platform on the deck of a crane barge, consisting of mats upon which the crane's clamshell bucket had been placed, shifted and separated while plaintiff was attempting to connect the bucket to the crane. As a result of the mats shifting and separating, the bucket dropped between the mats due to the force of gravity and opened, causing a cable held by plaintiff to be drawn into a sheave together with plaintiff's right hand, thereby causing him to sustain serious injuries.

34.    On or about August 21, 2023, no proper devices which are enumerated within New York Labor Law Section 240(1) were furnished to plaintiff as well as other safety devices required by rules and regulations of the United States and State of New York, by consensus industry standards and by the common law.

35.    The foregoing failures were substantial factors in causing plaintiff's accident and injuries.

36.    At all relevant times herein mentioned, AMTRAK was an "owner" with respect to the

Property within the meaning of Sections 200, 240 and 241 of the Labor Law of the State of New York and had title to the Property at which and for which the construction aforesaid was being performed.

37.    At all times herein mentioned, AMTRAK was a "contractor" with respect to the Property within the meaning of Sections 200, 240 and 241 of the Labor Law of the State of New York.

38.    At all times herein mentioned, WEEKS was a "contractor" with respect to the Property within the meaning of Sections 200, 240 and 241 of the Labor Law of the State of New York.

39.    At all times herein mentioned, KIEWIT was a "contractor" with respect to the Property within the meaning of Sections 200, 240 and 241 of the Labor Law of the State of New York.

40.    At all times herein mentioned plaintiff was, with respect to the Property, a "person employed therein or lawfully frequenting such places" within the meaning of Sections 200, 240 and 241 of the Labor Law of the State of New York and, in all other respects, lawfully at the Property.

41.    The injuries to plaintiff were caused by the negligence of the defendants and by their breach of the provisions, Sections and Sub-Sections of Labor Law §§200, 240 and 241 and the provisions of the Industrial Code promulgated and administered by the New York State Department of Labor, and plaintiff's injuries were caused by breaches of other statutes, rules and regulations.

42.    The defendants were negligent and their agents, servants and employees were careless,

reckless and negligent, in that they permitted and allowed the Property to be dangerous, failed to provide the various protective appliances, devices and equipment, as required by law, failed to provide sufficient help to perform the work, failed to provide reasonable and adequate protection to the lives, health and safety of plaintiff as required by law, failed to correct hazardous conditions upon the property, failed to provide adequate protections to plaintiff, despite their knowledge of its existence; they failed to provide adequate personnel and equipment given the reasonably foreseeable harm to plaintiff; they failed to provide a safe place and means to perform the work assigned to plaintiff; they failed to warn plaintiff of the hazards attendant to his employment; they failed to exercise that degree of care which a reasonably prudent person would have exercised in like circumstances; and defendants were otherwise careless, reckless and negligent in their maintenance, operation, securing, ownership, possession and control of the Property; and are otherwise strictly liable for plaintiffs' injuries pursuant to the violation of the New York Labor Law and 33 U.S.C. § 933.

43.    Defendant AMTRAK, by and through its agents, servants and employees, was negligent in permitting dangerous and unsafe conditions to exist at the Property; failing to furnish or cause to be furnished a safe place to work, adequate assistance, proper equipment, and safe means and methods for performing the work; failing to inspect, secure, maintain, correct or remedy the hazardous conditions; and failing to warn plaintiff of those conditions. AMTRAK is further liable for its violations of Labor Law §§ 200, 240(1) and 241(6), together with the applicable provisions of the New York State Industrial Code. Such negligence and statutory violations were substantial factors in causing plaintiff's

accident and resulting injuries.

44. On or about August 21, 2023, the injuries and damages suffered by plaintiff were caused jointly and severally by the negligence of the defendant AMTRAK, its officers, agents, servants, and employees.

45. The plaintiff was free from any contributory negligence.

46. Due to the negligence of the defendant AMTRAK, and the dangerous conditions of the property as set forth above, plaintiff's muscles, nerves, tendons, and blood vessels were severely wrenched, sprained, bruised and otherwise injured; he sustained a crush injury to his right hand when it became caught in a component of the clambucket, including injuries to his right hand and fingers that required surgeries; he sustained internal injuries, the full extent of which is not yet known; he sustained severe injury and shock to his nerves and nervous system; he has in the past required and will in the future require medical treatment, care and attention; he has in the past been and will in the future be obliged to expend monies and incur obligations for medical care and attention; he has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish; he has in the past been disabled from performing his usual duties, occupations and avocations; and has in the past suffered a loss of earnings, and will in the future suffer diminution in earnings capacity.

47. By reason of the foregoing, plaintiff claims compensatory damages in an amount found fair and reasonable by the trier of fact, plus claims for such costs, fees and interest as the law allows.

## AS AND FOR A SECOND CAUSE OF ACTION
### FOR VESSEL NEGLIGENCE AGAINST WEEKS

48. Plaintiff repeats, reiterates and alleges each and every allegation contained in the First Cause of Action, together with the same force and effect as though fully set forth at length herein.

49. At all times herein mentioned WEEKS is, and on or about August 21, 2023 was, the owner, or the owner pro hac vice, of the crane barge upon which plaintiff was working at the he was injured (hereinafter "The Barge").

50. Upon information and belief, at all times material hereto defendant WEEKS leased The Barge in coastwise and intra-coastal commerce.

51. Upon information and belief, at all times material hereto defendant WEEKS possessed The Barge in coastwise and intracoastal commerce.

52. Upon information and belief, at all times material hereto defendant WEEKS operated The Barge in coastwise and intracoastal commerce.

53. Upon information and belief, at all times material hereto defendant WEEKS managed The Barge in coastwise and intracoastal commerce.

54. Upon information and belief, at all times material hereto defendant WEEKS maintained The Barge in coastwise and intracoastal commerce.

55. Upon information and belief, at all times material hereto defendant WEEKS controlled The Barge in coastwise and intracoastal commerce.

56. Upon information and belief, at all times material hereto defendant WEEKS was the bareboat charterer, and/or was the owner pro hac vice of The Barge.

57. On or about August 21, 2023, plaintiff was in the employ of WEEKS as a dockbuilder/diver. As such, plaintiff was a covered employee as defined under 33 U.S.C. § 901 *et seq.*, commonly known as the LHWCA.

58. On or about August 21, 2023, plaintiff was performing dockbuilding work on the project while he was aboard defendant WEEKS' Vessel, while the Vessel was upon the navigable waters of the United States at the Project.

59. On or about August 21, 2023, plaintiff was working on The Barge that was owned, operated, managed, bareboat chartered or otherwise within the control of WEEKS.

60. Pursuant to 33 U.S.C. § 905(b), plaintiff is entitled to maintain an action against defendant, in its capacity as the owner, owner pro hac vice, bareboat charterer, operator and/or party in control of the Vessel, for injuries caused by the negligence of the Vessel, as a third-party action in accordance with 33 U.S.C. § 933.

61. On or about August 21, 2023, plaintiff, while acting in the course of his employment, was working upon unsecured mats that had been placed on the deck of the Barge by WEEKS, in its vessel owner capacity, to protect the deck from damage by the crane's clamshell bucket. While plaintiff was attempting to connect the bucket to the crane, the mats unexpectedly shifted and separated, causing the clamshell bucket to drop between the mats and open. As a result, the clamshell bucket's cable drew plaintiff's right hand into a sheave, causing him to sustain the serious injuries described above.

62. Specifically, WEEKS, in its capacity as vessel owner and/or party in control of the Barge, placed or permitted unstable and unsecured mats to be on the deck, creating an unsafe surface upon which plaintiff was required to work and upon which the crane's clamshell

bucket was stored. WEEKS is also liable for such other acts and omissions as the evidence may establish.

63. Plaintiff's injuries were caused by the unsafe conditions and the negligence of the Barge owner WEEKS, by its agents, servants, workmen and employees and by the dangerous conditions that existed on its Vessel when it arrived at the Bridge construction site.

64. Plaintiff's injuries were caused by statutory and regulatory violations, including but not limited to, the violation of the ISM Code, OSHA regulations and related enactments, as the evidence will show.

65. In its capacity as owner, owner pro hac vice, bareboat charterer, operator and/or party in control of the Barge, WEEKS failed to exercise reasonable care with respect to the condition of the Barge, its deck, mats, equipment and appurtenances; failed to correct or warn plaintiff of dangerous conditions within its control; and caused, created and/or permitted the unsafe and unstable condition that caused plaintiff's injuries. WEEKS knew or should have known of the dangerous condition and failed to exercise the degree of care that a reasonably prudent vessel owner would have exercised under similar circumstances.

66. By reason of the foregoing, plaintiff claims compensatory damages in an amount found fair and reasonable by the trier of fact, plus claims for such costs, fees and interest as the law allows.

**AS AND FOR A THIRD CAUSE OF ACTION**
**FOR VESSEL NEGLIGENCE AGAINST KIEWIT**

67. Plaintiff repeats, reiterates and alleges each and every allegation contained in the prior Causes of Action, together with the same force and effect as though fully set forth at length herein.

68. Upon information and belief, on or about August 21, 2023, KIEWIT was the owner and/or owner pro hac vice of The Barge upon which plaintiff was working when he was injured.

69. Upon information and belief, at all times material hereto defendant KIEWIT leased The Barge in coastwise and intracoastal commerce.

70. Upon information and belief, at all times material hereto defendant KIEWIT possessed The Barge in coastwise and intracoastal commerce.

71. Upon information and belief, at all times material hereto defendant KIEWIT operated The Barge in coastwise and intracoastal commerce.

72. Upon information and belief, at all times material hereto defendant KIEWIT managed The Barge in coastwise and intracoastal commerce.

73.  Upon information and belief, at all times material hereto defendant KIEWIT maintained The Barge in coastwise and intracoastal commerce.

74. Upon information and belief, at all times material hereto defendant KIEWIT controlled The Barge in coastwise and intracoastal  commerce.

75. Upon information and belief, at all times material hereto defendant KIEWIT was the bareboat charterer, and/or was the owner pro hac vice of The Barge.

76. On or about August 21, 2023, plaintiff was in the employ of KIEWIT as a dockbuilder/diver. As such, plaintiff was a covered employee as defined under 33 U.S.C. § 901 *et seq.*, commonly known as the LHWCA.

77. On or about August 21, 2023, plaintiff was performing dockbuilding work at the Project while he was aboard defendant KIEWIT's Vessel, while the Vessel was upon the navigable waters of the United States.

78. On or about August 21, 2023, plaintiff was working on The Barge that was owned, operated, managed, bareboat chartered or otherwise within the control of KIEWIT.

79. Pursuant to 33 U.S.C. § 905(b), plaintiff is entitled to maintain an action against defendant, in its capacity as the owner, owner pro hac vice, bareboat charterer, operator and/or party in control of the Vessel, for injuries caused by the negligence of the Vessel, as a third-party action in accordance with 33 U.S.C. § 933.

80. On or about August 21, 2023 plaintiff, while in the course of his employment, was working on the unsecured mats whose purpose it was to protect the deck of The Barge and while he was attempting to connect a clamshell bucket to the crane, the mats unexpectedly slid and shifted apart, causing the clamshell bucket to drop and open which resulted in the bucket's cable pulling plaintiff's right hand into a sheave, causing him to sustain the serious injuries described more fully above due to inadequate equipment, and the inherently dangerous conditions of The Barge and its appurtenances.

81. Specifically, plaintiff was injured due to an unsafe and unstable platform that the vessel owner KIEWIT placed on the deck of The Barge, that created an unsafe and unstable surface upon which to work and store the crane's clamshell bucket and defendant

KIEWIT is also liable for such other acts of negligence as the evidence will show.

82. Plaintiff's injuries were caused by the unsafe conditions and the negligence of the Barge owner KIEWIT, by its agents, servants, workmen and employees and by the dangerous conditions that existed on its Vessel when it arrived at the Bridge construction site.

83. Plaintiff's injuries were caused by statutory and regulatory violations, including but not limited to, the violation of the ISM Code, OSHA regulations and related enactments, as the evidence will show.

84. Defendant KIEWIT failed to provide reasonable and adequate protection to the life, health and safety of plaintiff as required by law, failed to correct hazardous conditions upon the Barge, failed to provide adequate protections to plaintiff, failed to provide proper and safe equipment for the work it assigned plaintiff, and failed to warn of the hazardous conditions that existed on the Barge, among other failures. KIEWIT, as vessel owner, caused and created the hazardous conditions which caused plaintiff's injuries. Despite KIEWIT's knowledge of the existence of these conditions, it failed to provide adequate equipment given the reasonable foreseeability of harm to plaintiff; it failed to provide a safe place and means to perform plaintiff's work; it failed to exercise that degree of care which a reasonably prudent vessel owner would have exercised in like circumstances; and defendant is otherwise careless, reckless and negligent in its maintenance, operation, securing, ownership, possession and control of its vessel; and is otherwise liable for plaintiff's injuries pursuant to its negligence and its breach of statutes, rules, standards and regulations applicable to it, or those to which reference in the industry is made which create a reasonable standard of conduct with which it failed to

comply.

85.    By reason of the foregoing, plaintiff claims compensatory damages in an amount found

fair and reasonable by the trier of fact, plus claims for  such costs, fees and interest as the

law allows.

WHEREFORE, plaintiff demands judgment against defendants as aforesaid on the

above causes of action.

Dated:  New York, New York          HOFMANN & SCHWEITZER
       August 5, 2026

By: _____
      Timothy F Schweitzer (TS2167)
      Attorneys for Plaintiff
      212 West 35th Street, 12th Floor
      New York, N.Y. 10001
      Tel: (212) 465-8840